Our second case of the morning is 4090879 in re the Marriage of Delana Rhodes and it's also 4-10-0110. For the appellant Mr. Anderson and for the appellee Mr. Vealey you may proceed. Please this honorable court, Mr. Vealey. There are three basic questions before the court today. The first is whether the docket entry on September 24, 2009 was a final appealable order. And if it was, then I'm out. I didn't file a notice of appeal within 30 days or a post-trial motion. If it wasn't, which I believe is the case, then the second question arises. And is that that the following the docket entry in January determined the petitioner's petition for attorney's fees, if in fact that then made it a final appealable order. And if it did, then in fact we should be here. And the third question should come up and that is whether or not the court used its discretion in making the ruling that it did. So the first issue is should we be here. And I believe from the beginning that the September 24, 2009 docket entry was not a final appealable order for a multitude of reasons. First, as you know, the law is that the court must look to the issue of what the substance of the ruling is as opposed to necessarily its form. But its form is really totally lacking. There is no reference to what pleadings are being decided. There is no reference to what relief was requested. And there is no statement that such relief is granted or denied. The court merely states that it believes that maintenance should continue at the current level. And then further orders that the respondent pay in a maintenance or rearage not defined quantifiably or by a method of calculation as to what he should do that within a specific time frame. That's all the order consists of. At that time there was pending a petition or rather a motion to terminate or modify maintenance. A response to that, a motion for summary judgment, a cross motion for summary judgment. Mr. Anderson, who says it was a final order? The judge did. Where? The judge did on the hearing on November 9th. I stated to him. Is there a transcript? Can you point me to the record where the judge says that? And even if he said that, does that make jurisdiction? It doesn't make jurisdiction, but it put me in an impossible position. Let's back up first. Where does the judge state that in the record? I looked and I do not believe we provided you the transcript from that day. Although Mr. Vealey and I have both in our briefs stated that's what our understanding of what he said that day. We deal with the record. I understand that. There's nothing, so you're telling us today there's nothing in the record that shows Judge Klaus said that was a final order on September 24th, 2009. I have made citations in my brief to specific points, but I do not believe we provided you with a transcript from that hearing. And Mr. Anderson, would you agree that if it is in fact not a final order, the fact that a judge says it's a final order doesn't make it so? I think that's probably true. I think it is this court's promise to decide that. I essentially was put in the position at that point of trying to convince the court that in fact it was not a final appeal. Well, you don't have to convince the court of anything regarding a final or non-final order. It is or it isn't. I think it impacts his approach to what occurs thereafter. In what way? In that he is going to then, quote, attempt to enforce that order. Well, orders are enforceable even if they're not final, aren't they? I think they are, but we have to go through the process of deciding each of the issues. And he has not yet at that point gotten to the point of saying, you know, this is what we have done and this is what we're doing forward. The only thing he did say was he did set the petition for attorney's fees for hearing. It's not the judge's place, though, as the trial court judge, to give you legal advice on whether something constitutes a final order or not. I certainly agree with that. Okay. All right, go ahead. All right. The question then becomes did the ruling on attorney's fees constitute, make what had occurred up to that point now a final appealable order? Again, the 924 docket entry was totally lacking in defining things that I had previously stated, such as what claim was being ruled upon, what relief was being granted or denied, and what judgment was being entered. However, to the extent that the primary thing keeping that from being a final appealable order, if that was the issue of having resolved the issue of attorney's fees, then the January docket entry does deal with that and then it denies the petition of the petitioner for attorney's fees as well as the petition for interim attorney's fees. It did not specifically deal with the issue of what prayers there had been for attorney's fees for sanctions that appeared both in the response to the motion for termination or modification of the maintenance or in the motion for summary judgment of the petition. So you don't think the January 21 docket entry is a final order either? I am certainly uncertain on that because I think that that possibly could be it. Now, in both of those pleadings, the petitioner never stated that they were making a Supreme Court Rule 137 claim for sanctions, but they specifically asked for attorney's fees for reasons that would be called for under that rule. However, to the extent that this in fact then is a final order, then I think we need to move to the third point. But again, if the court here believes that the docket entry in January does not constitute, make what has occurred to that point, a final appeal of more, again, we shouldn't be here. Mr. Anderson, you're the appellant. It's your job to know whether you should be here or not, isn't it? Well, I believe that that is my responsibility. But I also think that the fact that the trial court has taken a position on that subject, which is in a position that the only way we correct that is to move forward. You've already told me there's nothing in the record that shows us that the trial court took a position, and you also agreed that whether the trial court calls it a final order or not is meaningless. It has to be final. Whether somebody labels it final when it's not final means nothing. You, in your brief, said the docket entry of January 21, 2010 does not make the September 24, 2009 docket entry a final appealable judgment. Because it does not rule under DELENA's Rule 137 claim for attorney's fees. You've taken the position in your own brief that the January 21st order is not final. So I'm having trouble understanding why you're here. Well, we're here because it could be interpreted that way. I think one of the problems that we have with the law as it currently exists is that it is a bit inspecific in that regard. It says, well, it must resolve all matters, but we're looking to substance and not to form. And one of the problems that we have with these rulings in this case to this point, particularly the September 24th ruling, is that it is very inspecific and does not refer to what relief was requested and whether it's been denied or granted. But the September 24th docket entry order set the matter for a hearing on attorney's fees. I agree. So clearly not everything was resolved in the September 24th order. I would agree that everything was not. And yet we are then at this point that when we hear the attorney's fees issue, that is heard. And in his ruling, he states specifically, well, I think we should leave the parties to pay their own attorney's fees. But he doesn't say, therefore, I'm denying all requests for attorney's fees. He says we deny the petition for contribution, essentially, and the petition for interim attorney's fees. He doesn't deal with, specifically state, whether he's dealing with the potential claims under Supreme Court Rule 137. That's the January 21st docket entry. That's correct. That's correct. And we did file a timely notice of appeal following that docket entry. But your position is that wasn't a final order. And my position is I don't think it is. However, based on the issue of substance, I think it can be certainly stated. It could be taken and interpreted that this decision said no attorney's fees of any kind. If that's the case, then we should be here. The court said on that point, it says as a way to relative abilities of the parties to pay, the court has weighed the underlying relief awarded and sought. The court also believes the parties have over-litigated this case. The court declines to shift fees or costs. The petition for attorney's fees and the petition for interim fees are denied. Each party to bear its own fees and costs. So that's what the ruling did. It mentions specifically the petition for attorney's fees and the petition for interim fees. It does not specifically mention the prayers for sanctions under the rule to show cause, the prayer for sanctions under the response to the motion to terminate or modify maintenance, or in the motion for summary judgment of the petition. It doesn't mention that. When you're talking about attorney's fees for sanctions, you're not talking about shifting attorney's fees. I agree with that. And yet, if we look at this, he says that the court has weighed the relative abilities of the party, weighed the underlying relief awarded, and sought. And so part of the relief sought was sanctions. Attorney's fees for sanctions. So to the extent that substantively that covers that subject, yes, we should be here. Was there a hearing on November 9, 2009? Yes. There's no docket entry reflecting any hearing ever occurred. There was a hearing on that day, and I believe even testimony taken. And the court took it under advisement on that day, and as it says on the 21st, it had taken it under advisement and made this ruling. But there's no docket entry that I could find that showed. Counsel showed up and argued the issues. There's no docket entry for November 9. Mr. Vealey, I think, filed a request to have you provide the report of the proceedings. It was a December 1, 2009 motion for designation of additional portions of proceedings for inclusion in the report of proceedings, specifically asking for a complete transcript of all proceedings of November 9, 2009. You've not provided that. I did file a motion to supplement the record. And to the extent that we were trying to respond to that motion or that request. I don't have that with me today, so I can't specifically say that that was in there. Okay. The final issue is, if in fact we should be here, and is the question of whether or not the court used its discretion in essentially refusing to terminate or modify the hearing. The facts are that the respondent had a business, which he had owned way back when the parties were getting divorced. That was awarded to him. He and his brother owned this business together. Shortly before all of these problems arose, he made an agreement with his brother to buy out his brother's interest if that brother decided to retire. In the meantime, he had been a day trader on stock and had done very well. But also, it turned around and he did horrible. He showed one year a million dollars in income from the sale of the trading stock. And paid $300,000 in income tax. Then he turns around and ends up showing almost $800,000 in carryover losses following that as the market turns around. In the meantime, his business, which had been and continuing to grow, had a serious hit in that one of his major suppliers, the product lines that he offers as essentially a distributor of beauty products, mostly to mom and pop type of hair salons, withdrew that line. And was no longer offering it to him, but was offering it to his customers essentially through big box stores. So you could go to the pharmacy now and buy this product. So he tried to get another line. And he did that and he had other problems with lines. And you can see, as we've set forth in the Statement of Facts of Arbery, and as appear in all the documentation in this, what his income tax return and those of the company reflect is that his personal income as an employee of the business and the net income of the business after payment of his expenses went from making him about $80,000 a year to being a net loss. At which point he filed this petition to modify. We believe that that is fortuitous to him. The response in evidence by the petitioner is to say that he lived an outlandish lifestyle, and he certainly probably did when he was making money hand over fist in the stock market, and that he had gotten remarried and he continued to support his wife, who really had very minimal income, I believe $1,000 a month essentially from Social Security. And then therefore claimed he was indigent and couldn't continue to support his ex-wife. The petitioner, whose affidavit shows that she had substantial assets and significant, although not huge, income per month. Further, there were multiple efforts to point out that he had paid some expenses, personal expenses such as taking care of his dog and other things through the business, but there was no showing that that was any different than before, or that there was really any substantial change in what was going on in that regard. He wants to make a big deal of the fact that in a financial affidavit, he at one time mistakenly stated that his current wife was a half owner, even though that was never true. It was an error in making up the affidavit. Point that out. The trial court has not handled many dissolution cases, and it uses the term dissipation of assets as if that could possibly, as that term is used in family law cases, be relevant here. What it really was saying was that he has blown his money, and that somehow wanting to impose on him an obligation to have saved money for the future, to be able to pay his maintenance obligation. I don't think the law requires that. I think the law requires that if maintenance is called for, one of the parties needs assistance with his or her income in order to be able to pay her expenses, as would have been expected had the marriage continued. We're not looking to a question of that having to be saved up and assets let aside for it. It's using the income the parties otherwise would have joined at that time, and that's not what's happened here. So at this point, what we've come here to do today is to ask you, either rule that this is or this is not, properly before the court at this point, and if in fact it is, to reverse what the court ruled to the extent that it did so, in denying the petition to modify or terminate maintenance. I want to ask a question. I think it is correct that both of you assert this, but as an officer of the court, you're indicating that you and Mr. Vealey appeared in court on November 9th, and the trial court issued an oral ruling on the attorney's fees issue, as that issue existed at that moment, the attorney's fees on the post-dissolution matter. Because he'd already denied your motion to terminate maintenance on September 24th, come back on November 9th for a hearing. You're asserting there was a hearing on that date, but for whatever reason, there's no docket entry, there's no order, there's no transcript. And he took the matter under advisement that was heard on the 9th of November and made the ruling. And didn't make the ruling until January 10th? That is correct. Anything further? Thank you. You'll have time to rebut. Good morning. May it please the court, my name is Jack Vealey and I have the opportunity of representing the wife, former wife in this case. I've been down here numerous times in my professional career, and I always appreciate the opportunity of coming here. However, I will say in all honesty, I don't know why I'm here. I think it is clear from the record in this case that the September 24 order, docket order, is not final for numerous reasons, which Mr. Anderson stated. But also, I think one of the key reasons is that after the trial court entered the docket entry of September 24, 2009, a few days later on September 30, 2009, I filed in for my client a written motion for assessment of statutory interest on unpaid maintenance, which I believe under the new statute is mandatory. In other words, the court has to allow interest on the arrearage of alimony, which at that time was somewhere in the thousands of dollars. However, you will see in the record that the trial court never addressed that issue of statutory interest, and as we speak today, it remains unaddressed by the trial court. And in our brief for the former wife in this case, we cited the Rago machine case, RAGO, which holds clearly that as long as there is a motion or petition for interest in a case that is unruled upon, then there can be no final judgment. So I think there are a lot of reasons you can hang your hat on why that September 24 entry is not final, but I think this is probably one of the strongest. Namely, the court has yet to rule on the prejudgment interest, and as Mr. Anderson correctly pointed out, and I think there's a lot of case law on this, usually when a trial court does a judgment that concerns a monetary award, it's always spelled out in dollars and cents. That was never done in this case. And then, of course, the real kicker here is there never was a request for a 304 finding here to make the orders final and appealable. That was never done. Now, I guess we could always say hindsight's 20-20 in every case, but I think what Mr. Anderson should have done in this case for the former husband would have been this. If he didn't like the docket entry of September 2409, then why not file within 30 days a timely post-trial motion for reconsideration, whatever, to raise these things that he's raising belatedly? Or, if he didn't like the ruling, then why not request a 304 finding, which he never did. He could have done that within 30 days. Or, if he didn't like the ruling, why not ask for a 308 finding? I've done that once in my career, but as I understand the law under 308, the trial judge or the attorney can ask that the question be certified. In this case, I think the way to have stopped this horrible miscarriage of justice here, and expense to my client, would have been to ask or submit maybe a 308 request, is there or is there not a final order here, and I think that would have made it nice and clean. The way it came now, it's disjointed. I've had to write two briefs, literally, for my client, because you've got the issue number one of jurisdiction, which I think Mr. Anderson concedes or does not, and then two, Mr. Anderson's a very good attorney, he's very clever, what he does here is he bootstraps the issue of the merits, he ties that to the issue of jurisdiction, so in other words, he's gotten here to the appellate court on the issue of the merits by raising the issue of jurisdiction and forcing us to literally write a responsive brief on the merits of the case as to why the trial court was correct in September 24 of denying Mr. Rhodes' petition to terminate or modify maintenance. So basically, that gets me into my next point, we're requesting sanctions in this court because I think Mr. Anderson is a very good attorney, he's very intelligent, he's probably smarter than I am, I'll concede that, but yet, as good attorneys, we are bound to follow the law, and I know we all kind of veer once in a while, and I think this is a case where Mr. Anderson realized with all respect that the docket entry of September 24 was not final, and the result is he's filed a bunch of motions, perhaps to try and make it final, but he didn't ever do that correctly, and then he files not one, but two appeals, and then we're forced to write a brief, number one, on the issue of jurisdiction, and number two, on the merits of the case. As you can see, the record is voluminous, it took a lot of time to do this. Does the court procedure require that you file three volumes of what happened in the trial court? I'm not sure, but I think it's Mr. Anderson's call here, because he's the appellant in this case, and I guess, as was pointed out earlier in the argument, we had requested on behalf of my client for that transcript on the hearing in question, and it never came, to be quite frank with you. So the problem is now we've got a more or less a bifurcated appeal, and I think the appeal is frivolous, because Mr. Anderson knows that it's not final, we all know that, and yet he goes into the merits of the case, and I think what's going to happen, if I get my crystal ball out here, I would guess, with all respect, that this appellate court is probably going to send the case back for lack of jurisdiction, so it's got to go back to the trial court for him to address these issues that are still outstanding, and then at that time in the year 2011, we'll have a final order, which will probably come back, and then we'll get back at that time to the true merits of the case. But in the meantime, we've been here, wasted a lot of time, wasted everybody's money on issues that really are nebulous and really don't exist. I mean, we all know there's no jurisdiction here, and it just seems senseless to go through this legal mental gymnastics that we're going through to really know, and I think we can find out that it's not final and that it has to go back for further consideration. So that is our position in a nutshell. I really feel uncomfortable addressing the merits of the case. I will if you feel it's necessary, but I don't think it's proper because I don't think it's before the court since there is no jurisdiction. But I have a few I disagree with Mr. Anderson's interpretation of the facts here. If you look at the record and look at the exhibits, Mr. Rhodes in one year had I think over five million dollars in stock revenue. And in other years I think he had close to a million dollars in sales. And no one to date has been able to explain to us or anybody else what happened to that five million dollars. And even the trial court, we pointed out in our brief on page 40 that even the trial court quizzed Mr. Rhodes. He says, well, Mr. Rhodes says, I can read a balance sheet. He says, I know there's a million dollars left. What'd you do with it? And Mr. Rhodes just kind of bumbled around and stumbled in his speech. He never could explain what happened to the remaining one million dollars that the judge picked up on. Other factors show, as Mr. Anderson I think honestly said, Mr. Rhodes had a very lavish lifestyle. This man went to the boat, he blew $20,000, he drinks, he gambles, he has a dog, he has a new wife that he's supporting, he paid his brother $186,000 to buy out the cosmetic business. It just goes on and on. And here again as Mr. Anderson says, although he claims it's a mistake, but if you look at the record time and time again, in his financial affidavit he says, I'm the sole owner of this condo or duplex that I own. Then in the next affidavit, my new wife owns half. Then the next affidavit, I'm the sole owner. I mean, these things track for five or six times of I think outright lies. It's perjury. And I think the crowd court picked up on that. Also, if you look at the testimony of Mr. Rhodes in this case, he filed false income tax returns because what he's doing, he's taking many of his home expenses, like the car and cleaning, insurance and other things, and he's having that paid through his personal corporation, Rhodes Beauticians, Inc. And obviously he's getting a free ride home with that. He's deducting that illegally, and of course that minimizes his income. And I think the trial court really hit this on the head when the court said that an enormous amount of wealth has been dissipated by the respondent, and the court holds that respondent's circumstances were voluntarily created. And certainly the court was in a position, I think, to render that decision because the evidence cries out. I mean, this is a strange case. Not every day do you get a case where the man had $5 million in one year, and then a few years later he claims poverty. He says he has no more money, but he can't explain to you what happened to the money. And I think the trial court saw through that and ruled against him correctly because the evidence here cries out that there was fraud and dishonesty going on. I think we need a testimony. So, in summary, we would ask on behalf of Petitioner Delina Rhodes that the appeal be dismissed for lack of jurisdiction. I don't think there is jurisdiction here. But secondly, that this court please consider our request for Rule 375 sanctions because I don't think we should be here today. I know my client is going to be very upset when I send her a bill for $15,000 or $20,000 for basically two appeals that we've had to do. And I think that bill ought to be paid by Mr. Rhodes or Mr. Anderson or some portion thereof because it's just wrong to drag us down here to the appellate court. I mean, if this type of procedure is allowed, every time you got an order you didn't like in the trial court as an attorney, you'd simply file a notice of appeal. It would be just impossible. The system would break down. So, for these reasons, we would ask that you dismiss the appeal and award attorney's fees. Thank you. With respect to the issue of sanctions, I don't think sanctions are appropriate here for several reasons. But Mr. Vealey stated that I had several options when I made the conclusion that the September 24, 2009 docket entry was not a final order, that I could file a motion to reconsider. Well, if it's not final, that's not the time to do it. So I didn't. We were going to the hearing on attorney's fees. He says I could have asked for 304A ruling. I wasn't trying to get an appeal at that point. I was expecting us to go through with all these issues. But the court then rules, or at least states, that there was a final appeal of the order and that he was going to enforce it. And we had not filed a notice of appeal. And as a result, this was a final order. In that situation, I filed this motion asking it to declare that it wasn't a final order. I was trying to give the court an opportunity to reconsider its position. Now, I filed that on the 12th of November. I took a courtesy copy to the court's chambers. On November 13, the very next day, it made a docket entry in which it summarily denied that motion. However, it didn't advise either Mr. Vealey or I of that. I only learned of it by watching the court's website and looking for a docket entry. And sure enough, it came up. Well, Mr. Vealey hadn't done that. So he filed a motion to strife my motion. And in that motion argued that the 924-09 docket entry was a final order. And that 30 days had elapsed. And as a result, I'm too late to talk about it. And it's over. And so it was his position at that point that in fact it was a final order. So I think I was put in a position that I had at least tried to come here and get this court to say, well, it is or it isn't. And it was my belief that it wasn't at that time. I think it's certainly possible that this court could believe that having made the docket entry in January, after the November 9 hearing, that then we are final because we have dealt with the issue of attorney's fees. Even though, as I have pointed out to this court, I think that he didn't really specifically say whether he was ruling on request for sanctions. What about the motion for interest on the unpaid maintenance, the urge? And again, I think I have to agree with Mr. Vealey that that became pending following that time. But we never really even had a hearing on that issue. I will require these three volumes. Is that the complete record of what happened in the trial court? I'm afraid that is. I wanted it to go from the point of filing my motion to modify or terminate maintenance forward. Mr. Vealey insisted that we get the entire record from the beginning of the filing of the case. Insisted what? Mr. Vealey insisted that we get the entire record. And furnish copies to all the judges? That's what he requested. But we don't have the whole record because we don't have November 9th. That's correct. I didn't realize that was the case. I think when I had initially asked for it, I had asked for it through the September 24th hearing and the denial of the motion that I had. Thank you.